IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN DICKEY SMITH                                                    PLAINTIFF

v.                                        CIVIL ACTION NO.  1:15-cv-173-JCG

CAROLYN W. COLVIN,
**Acting Commissioner of Social Security**                          DEFENDANT

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 10) AND GRANTING DEFENDANT'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (ECF NO. 15)

Pursuant to 42 U.S.C. § 405(g), Plaintiff John Dickey Smith seeks judicial review of the decision of the Commissioner of the Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-433, which pays benefits to disabled persons who have contributed to the program and who suffer from a mental or physical disability. Plaintiff has filed a Motion for Summary Judgment (ECF No. 10), challenging the Commissioner's decision that Plaintiff was capable of performing a modified range of light work from the alleged the onset date of February 15, 2010, through January 27, 2014, the date of the final administrative decision. The Commissioner has responded by filing a Motion for an Order Affirming the Decision of the Commissioner (ECF No. 15).

Having reviewed the administrative record, the submissions of the parties, and relevant law, the Court concludes that the administrative law judge (ALJ) complied with the Appeals Council's Order of Remand. The ALJ's January 27, 2014, decision is supported by substantial evidence and in accord with relevant legal standards. Plaintiff's Motion for Summary Judgment (ECF No. 10) should be denied

and the Commissioner's Motion to Affirm (ECF No. 15) granted.

## I. UNDERLINE_BACKGROUND

I. <u>BACKGROUND</u>

A.  <u>Factual Background</u>

Plaintiff alleges disability due to loss of right-sided peripheral vision in both eyes (a condition called homonymous hemianopsia or homonymous hemianopia), a lumbar herniated disc and low back pain, post-traumatic arthralgias (joint pain), attention deficit disorder, and anxiety. (ECF No. 9, at 292; ECF No. 11, at 3). Plaintiff completed the ninth grade and obtained a general equivalency diploma. (ECF No. 11, at 5). Born in 1977, Plaintiff was thirty-two years old on his alleged disability onset date of February 15, 2010. *Id.*

Plaintiff testified that he was in a single-car accident on December 21, 1998, that caused him to suffer permanent loss of right-side peripheral vision in both eyes due to brain trauma and caused chronic pain in his joints. (ECF No. 9, at 69). According to Plaintiff, he was ejected through the back passenger-door window, landing on the right side of his face, fracturing his orbital rim and causing his brain to swell. *Id.* Plaintiff stated that the car landed on him, crushing his ribs, puncturing his lungs, breaking the humerus of his left arm, and fracturing his knee. (*Id.* at 69-70; 376-77, 381-83, 392, 394; ECF No. 11, at 7-8). Plaintiff was hospitalized after the accident for almost a month. (ECF No. 9, at 89).

Plaintiff worked after the accident for over ten years, from 1999 until 2010. *Id.* at 293. From December 1999 to February 2003, Plaintiff worked for a casino, first in the housekeeping department and then as a bell person. *Id.* at 113, 273.

From September 2003 through June 2006, Plaintiff worked as a customer service representative for a cellular phone company, answering phones and performing data entry. *Id.* at 273. From September 2008 until March 2010, Plaintiff worked for an oil refinery doing various jobs, including that of a fire watchman. *Id.* In 2011, after the alleged onset of disability date, Plaintiff worked for one week as a forklift driver. *Id.* at 81.

B.   <u>Procedural Background</u>

Plaintiff filed his application for benefits on November 23, 2010. The Commissioner denied Plaintiff's application initially on February 15, 2011, and upon reconsideration on April 11, 2011. Plaintiff requested a hearing before an ALJ, and there was a hearing on May 15, 2012.

The ALJ issued a decision on September 28, 2012, finding that Plaintiff was not disabled. *Id.* at 126-39. Plaintiff requested a review of the ALJ's decision, which the Appeals Council granted. *Id* at 140-45, 208. On July 1, 2013, the Appeals Council vacated the ALJ's decision and remanded the case to the ALJ with seven instructions. *Id.* at 140-43. The first instruction required the ALJ to obtain a consultative opthalmological examination, "with particular consideration of the claimant's diagnosed homonymous hemianopia and related visual defects, and medical source statements about what the claimant can still do despite the impairment." *Id.* at 142. The Appeals Council also ordered the ALJ to further evaluate Plaintiff's mental impairment, residual functional capacity (specifically

with respect to concentration, persistence, and pace), subjective complaints, and third-party statements of Plaintiff's wife and mother. *Id.*

A second hearing before the ALJ occurred on November 18, 2013. *Id.* at 97-123. On January 27, 2014, the ALJ issued a decision, again finding that Plaintiff was not disabled from February 15, 2010, through the date of the decision. *Id.* at 23-39. The ALJ concluded that Plaintiff suffered from the severe impairments of "post-traumatic arthralgias, and chronic lower back pain due to lumbar disc disease with herniation, and homonymous hemianopia" but retained the residual functional capacity (RFC) to perform a modified range of light work, including his past relevant work as a customer service representative. *Id.* at 28-29, 34-35.

On February 5, 2014, Plaintiff requested a review of the ALJ's decision. *Id.* at 22. On March 31, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's January 27, 2014, decision the final decision of the Commissioner. *Id.* Having exhausted his administrative remedies, Plaintiff timely commenced the present action by Complaint filed June 3, 2015.

## II.  DISCUSSION

### A.  Judicial Review

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 405(g). Because both parties have consented under 28 U.S.C. § 636(c) to have a United States Magistrate Judge conduct all of the proceedings in this case, the undersigned has the authority to issue this opinion and the accompanying final

judgment.

Review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence on the record as a whole to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994). "'[S]ubstantial evidence' is less than a preponderance but more than a scintilla." *Bowling v. Shalala,* 36 F.3d 431, 434 (5th Cir. 1994). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales,* 402 U.S. at 401 (quoting *Consol. Edison v. NLRB,* 305 U.S. 197, 229 (1938)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988)(quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

Conflicts in the evidence are for the Commissioner to resolve. If the Commissioner's factual findings are supported by substantial evidence, they are conclusive and must be affirmed. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against the [Commissioner's] decision. *Bowling,* 36 F.3d at 434.

5

B.    Standard for Entitlement to Social Security Benefits

The standard for entitlement to Social Security benefits has been summarized by the United States Court of Appeals for the Fifth Circuit as follows:

> The claimant has the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity. *See* 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.  20 C.F.R. § 404.1572(a) and (b).  The ALJ uses a five-step sequential process to evaluate claims of disability and decides whether: (1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

> The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step.   Thus, the claimant must show first that she is no longer capable of performing her past relevant work.   20 C.F.R. § 404.1520(e).  If the claimant satisfies this burden, then the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy.  *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding.  *Id.*

*Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000).

C.    Analysis of Plaintiff's Alleged Errors

Plaintiff maintains that the ALJ erred by failing to comply with multiple aspects of the Appeals Council's remand order and ultimately argues that the RFC assigned to Plaintiff by the ALJ is not supported by substantial evidence.

6

1.    <u>Visual Impairment</u>

In her initial decision, the ALJ found that Plaintiff's visual impairment was not a severe impairment. (ECF No. 9, at 131-32). The Order of Remand from the Appeals Council directed that the ALJ to

> Obtain additional evidence concerning the claimant's vision impairment in order to complete the administrative record in accordance with regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513). The additional evidence should include a consultative opthalmological examination, with particular consideration of the claimant's diagnosed homonymous hemianopsia and visual defects, and medical source statements about what the claimant can still do despite the impairment.

*Id.* at 142.

After remand, the ALJ ordered an ophthalmological consultative examination, which occurred on August 21, 2013. *Id.* at 436-37. The consultative examiner found that Plaintiff's homonymous hemianopsia was stable and would not improve. *Id.* Plaintiff's best corrected vision at distance was 20/25 in the right eye and 20/25 in the left eye. *Id.* at 436. The examiner noted that Plaintiff "cannot see anything to the right" and should not drive, operate machinery, or work around hazardous materials. *Id.* at 437. Plaintiff's observed limitations were noted as "Runs into things, cannot drive, cannot see anything to the right." *Id.* When asked what effects Plaintiff's visual problems would have on Plaintiff's daily living activities, the consultative examiner wrote: "Can take care of himself but needs someone to drive him around and may need help with daily chores." *Id.*

7

The ALJ complied with the Appeals Council's remand instruction by obtaining a consultative opthalmological examination and considering the examiner's statements regarding the effects of Plaintiff's vision impairment on his daily activities. The ALJ fully accepted the consultative examiner's assessed limitations and accounted for those limitations in the RFC evaluation by concluding that Plaintiff was able to perform light work "except he should never climb ladders, ropes or scaffolds . . . he should avoid all exposure to hazards including unprotected heights and moving machinery; and he should not drive as part of his work duties." *Id.* at 29. The ALJ's decision is supported by substantial evidence.

2.   Mental Impairment

The ALJ determined that Plaintiff's attention deficit disorder, pain, fatigue, or side effects of medication, even in combination, would not impose "any appreciable limitation in his abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; or deal with changes in a routine work setting." *Id.* at 32. Plaintiff challenges this finding and maintains that his difficulties with concentration, persistence, and pace render him unable to work. (ECF No. 11, at 14-15, 19).

a.   Attention Deficit Disorder

In her initial decision, the ALJ found Plaintiff's attention deficit disorder to be a severe impairment and placed a restriction in the RFC that Plaintiff was "limited to performing simple routine tasks." (ECF No. 9, at 131-32). The Appeals

8

Council vacated the ALJ's first decision and admonished the ALJ for not evaluating the severity of the attention deficit disorder or its effects and not providing "specific references to the evidence supporting the assessed limitations . . . ." *Id.* at 141-43. The Order of Remand directed the ALJ to

> Further evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).

*Id* at 142.

On remand, the ALJ removed "limited to performing simple routine tasks" from the RFC and found that Plaintiff's attention deficit disorder, as treated, "would not be expected to interfere with his ability to work." *Id.* at 29. Plaintiff's attention deficit disorder, as treated, was found to "impose[ ] at most, mild limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace," with "no evidence this disorder has resulted in any episode of decompensation." *Id.* at 28-29.

The ALJ cited the evidence supporting the finding that Plaintiff's attention deficit disorder was not severe, as treated. Plaintiff presented to James B. Martin, M.D., his primary care physician on October 20, 2011, reporting "difficulty with short attention span." *Id.* at 346. Plaintiff began treating with Dr. Martin on May 4, 2011, about a year before the first ALJ hearing. *Id.* at 364. Dr. Martin's records reflect that on October 20, 2011, Plaintiff's mother requested that Plaintiff be

9

prescribed something for attention deficit disorder. *Id.* Dr. Martin prescribed Plaintiff Adderall. *Id.* Upon Plaintiff's return on November 7, 2011, Dr. Martin concluded that Plaintiff's difficulty with short attention span was "much improved on Adderall." *Id.* at 406. Dr. Martin's records from April 23, 2012, provide, "Adderall controls his ADD." *Id.* at 412. When the ALJ asked Plaintiff at the second hearing whether Adderall effectively treated his attention deficit problem, Plaintiff responded, "It helps out a lot. Yes, ma'am." *Id.* at 114.

The ALJ complied with the Appeals Council's instruction to more comprehensively review the effects of Plaintiff's attention deficit disorder and to make specific findings. After reconsidering the evidence and obtaining additional testimony from Plaintiff, the ALJ concluded that the RFC limitation of "performing simple routine tasks" was not supported by the medical evidence to account for attention deficit disorder because the medical evidence indicated that Plaintiff's attention deficit disorder was controlled with medication. Impairments controlled by medication are not disabling. *See James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986).

b.    Pain

The ALJ concluded that post-traumatic arthralgias and chronic low back pain were severe impairments, but she did not find that Plaintiff's pain would interfere with his concentration, persistence, or pace in a job setting. (ECF No. 9, at 32). Plaintiff contends that in making this finding, the ALJ "summarily ignor[ed]" a

medical source statement completed by Dr. Martin on September 11, 2013. *Id.* at

430-34. The medical source statement form asked Dr. Martin: "How often is your

patient's experience of pain or other symptoms severe enough to interfere with

attention and concentration?" *Id.* at 431. In response, Dr. Martin checked

"constantly." *Id.*

The ALJ explained that she gave Dr. Martin's medical statement "little

weight" because the treatment records from Dr. Robert L. Cobb, Dr. Terry Smith,

and Dr. Martin himself did not support the degree of limitation assigned by Dr.

Martin in the medical source statement. *Id.* at 31-34.

The ALJ discussed the treatment records of Robert L. Cobb, M.D., who

performed a consultative examination on February 7, 2011. *Id.* at 31, 343-344.

Dr. Cobb found:

> On examination of the upper extremities, he has some
> discomfort with ROM at both shoulders, but ROM is intact.
> He has no joint abnormalities noted at the elbows, wrists, or
> hands. On examination of the back, he has a full ROM, but
> complains of discomfort across the lower back. There is no
> spasm evident. He is able to squat and recover with the use
> of his arms. SLR is negative, bilaterally. DTRs are 2+,
> throughout. There are no sensory changes in the lower
> extremities. There are no abnormalities noted at the hips
> nor knees. He has some tenderness in the dorsum of the
> right foot; no deformity is evident.

*Id.* at 344.

Dr. Cobb's records further provide: "Even though he says he hurts most of the

time, he is able to be on his feet for an hour or two at a time before feeling the need

11

to sit and rest his back and right foot. He says he is generally able to lift and carry 15-20 lbs., occasionally; lifting and carrying greater weights will increase his back pain." *Id.* at 343. These findings are at odds with Dr. Martin's opinion in the medical source statement that Plaintiff could not stand for more than twenty minutes at a time and should never lift objects, even those less than ten pounds. *Id.* at 432-33.

The ALJ next discussed the treatment records of Terry C. Smith, M.D., a spinal and neurological surgeon, who examined Plaintiff on May 18, 2011. *Id.* at 31. Plaintiff was found to have "normal strength, reflexes, and gait, with decreased sensation in the S1 distribution on the left. He has mild tenderness to palpation of the lower back." *Id.* at 419. An MRI showed a disk protrusion/herniation with an inferiorly displaced free fragment explaining a lot of his back symptoms." *Id.* Dr. Smith discussed methods of treatment with Plaintiff, "including living with it, trying therapy, trying epidural injections, or having surgery." *Id.*

The ALJ's decision notes Dr. Smith's comments about pain medication. *Id.* at 432. As Dr. Smith was discharging Plaintiff, Plaintiff "started talking about pain and what I could give him for pain; it seems that he wants stronger medications." *Id.* at 420. Just two weeks before, Dr. Martin had begun prescribing Plaintiff Ultram for pain. *Id.* at 364. Dr. Smith informed Plaintiff that he nor Dr. Martin "could do that for him. I told him I was going to try to get him better as far as his back, and he said that would not cut it because he hurt all over." *Id.*

12

The ALJ also discussed treatment records from Dr. Martin for the period of May through October 2011. Dr. Martin found "no areas of tenderness over his lumbar musculature of SI joints" on May 4, 2011. *Id.* at 364. Dr. Martin prescribed Ultram to Plaintiff on this date and refilled that prescription on a regular basis when Plaintiff returned for treatment. *Id.* at 346-66, 412-34. On May 19, 2011, Dr. Martin reviewed Plaintiff's MRI showing "central disc herniation at L5/S1, with contact on the exiting left-sided nerve root and significant left sided neural foraminal stenosis." *Id.* at 361-62. On June 20, 2011, Dr. Martin noted that "Ultram works well on his pain." *Id.* at 358. On February 24, 2012, Plaintiff reported that his back pain was "worse since mowing grass," an activity inconsistent with the limitations alleged by Plaintiff and assigned by Dr. Martin. *Id.* at 415. In Dr. Martin's medical source statement, he opined that Plaintiff could not walk a city block without rest. *Id.* at 432. Yet, Dr. Martin's treatment notes of April 23, 2012, provide that Plaintiff's "chronic pain managed [with] Ultram." *Id.* at 412.

In addition to mowing grass in February 2012 – over two years after the alleged onset of disability, the ALJ considered that Plaintiff continued to work and drive after his alleged onset of disability. *Id.* at 33. In the third quarter of 2011, Plaintiff accepted a job as a forklift driver. *Id.* at 249. Plaintiff worked for a week and quit that job, not due to pain, but because he did not want to work the night shift due to his vision. *Id.* at 81-82, 103.

The ALJ "is entitled to determine the credibility of medical experts as well as

lay witnesses and to weigh their opinions accordingly." *Scott v. Heckler,* 770 F.2d 482, 485 (5th Cir. 1985). Dr. Martin's opinion that pain "constantly" interfered with Plaintiff's attention and concentration was not well-supported by the evidence, which indicated conservative treatment, and was inconsistent with Plaintiff's activities. The ALJ's findings of fact which are supported by substantial evidence are conclusive. *Ripley v. Chater,* 67 F.3d 552, 555 (5th Cir. 1995).

          c.    <u>Anxiety</u>

In a medical source statement, Dr. Martin indicated with a check mark that anxiety was a physical condition effecting Plaintiff's physical condition. (ECF No. 9, at 431). Dr. Martin checked "marked" when asked to what degree Plaintiff is limited in the ability to deal with work stress. *Id.* at 431. The medical source statement says nothing more about anxiety or stress.

There is no reference to stress in Plaintiff's medical records. The first reference in Plaintiff's medical records to anxiety, which Plaintiff did not allege was a severe impairment in his application but now maintains is a severe impairment, occurred on August 12, 2011, a year and a half after the alleged onset of disability date. On August 12, 2011, Plaintiff requested medication to reduce anxiety. (ECF No. 9, at 355). Dr. Martin prescribed Klonopin, .5 mg to be taken up to three times daily. *Id.* at 355. Plaintiff did not request a refill of Klonopin until April 23, 2012. *Id.* at 299-300, 412. Dr. Martin's notes from that date provide that Plaintiff was to take Klonopin as needed for anxiety. *Id.* at 412.

14

The entirety of the briefing on this subject matter follows:

> [Dr. Martin] indicated Plaintiff's anxiety affected his physical condition and that his pain or other symptoms were constantly severe enough to interfere with attention and concentration. Dkt. No. 9 at 431. He noted a marked limitation in Plaintiff's ability to deal with work stress. Dkt No. 9 at 427.

(ECF No. 11, at 11).

> The ALJ's cursory analysis of Plaintiff's mental impairment summarily ignores Dr. Martin's September 2013 opinion noting Plaintiff's anxiety affected his physical condition and that his pain or other symptoms were constantly severe enough to interfere with attention and concentration. Dkt. No. 9 at 431. Dr. Martin also noted a marked limitation in Plaintiff's ability to deal with work stress. Dkt. No. 9 at 427.

*Id.* at 15.

Plaintiff's counsel did not ask Plaintiff a single question about anxiety or stress at either administrative hearing. On this record, the Court cannot find that the ALJ erred by not including restrictions in the RFC to account for concentration, persistence, or pace. The ALJ's decision furthermore provides that even if "performing simple routine tasks" had been added to the RFC, the vocational expert testified that a person like Plaintiff and with his RFC could perform the representative jobs of rental cashier, booth cashier, and entry level dispatcher. *Id.* at 34-35.

    3.   <u>Dr. Martin's Opinion</u>

Dr. Martin's November 7, 2011, treatment records provide: "Patient is a high school dropout and can not be employed due to disabilities." *Id.* at 406. The ALJ assigned this opinion and the medical source statement of Dr. Martin "little

weight." *Id.* at 34. Plaintiff maintains that the ALJ erred by not giving the opinion of Dr. Martin controlling weight without considering the factors in 20 C.F.R. § 404.1527(c)(2). (ECF No. 11, at 16).

A treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" is to be given controlling weight. 20 C.F.R. § 404.1527(c)(2). Where a treating physician's opinion is not given controlling weight, factors are applied to determine the weight to give the opinion. *Id.* These include the length of the treatment relationship and the frequency of examinations, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the treating physician's specialization, and other factors such as the treating physician's understanding of the Social Security disability program and its evidentiary requirements. *Id.*

"The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 455-56.

Dr. Martin's opinion that Plaintiff "can not be employed due to disabilities" need not be considered because this issue is reserved to the Commissioner. *See*

*Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir. 2003). An opinion by a physician that a person is "disabled" or "unable to work" has no special significance because it is a legal conclusion, not a medical opinion. *Id.* The ALJ discounted Dr. Martin's medical source statement for reasons that have already been discussed. The degree of limitation assigned in the medical source statement was not fully supported by the medical treatment records, including Dr. Martin's, and the restrictions assigned were inconsistent with Plaintiff's actual activities after the alleged onset date of disability.

    4.   <u>Plaintiff's Credibility</u>

The ALJ did not find Plaintiff to be fully credible. In concluding that Plaintiff's vision impairment was severe but not disabling, the ALJ considered Plaintiff's work record and activities. Plaintiff continued to work and drive for over a decade after the 1998 motor vehicle accident that left him visually impaired. The ALJ found no evidence that Plaintiff's homonymous hemianopia had advanced. *Id.* at 33, 273, 416. The ALJ asked Plaintiff why he would have accepted a job in 2011 that required forklift driving if he could not see well enough to drive. Plaintiff's response was, "Ma'am, I was not advised that I'm not supposed to drive until about two months ago." *Id.* at 82. From this line of questioning, the ALJ confirmed that Plaintiff continued to drive until early 2012, over two years after the alleged onset of disability. *Id.* at 83.

The following exchange occurred at the first hearing:

ALJ:        Okay. What I'm not seeing is where you went from being a

working individual to where you went to being a non-working individual. I don't see any medicals lining up with that. Do you understand what I'm saying?

Plaintiff:    Yes – no, ma'am, I don't have any understanding.

ALJ:          Okay. Well, here's the deal.

Plaintiff:    Okay.

ALJ:          You were able to see well enough to drive and see well enough to work, and then all the sudden you weren't able without any kind of intervening injury that would have affected your vision. That's what I don't understand.

Plaintiff:    Okay. Ma'am, I – okay. Okay. Now, I guess the way to explain it is I tried to – I guess I lied to myself over this time trying to not admit that I had – that I had the problems. You know, I worked really hard trying to see, and then, like I said, this last time when I – about eight months ago when I ran into the wall at my home, I guess – I mean, it just knocked some sense in to me to understand that I'm not safe to be on the roadways –

ALJ:          Mm-hmm.

Plaintiff:    – and I'm – you know, I'm just not functionable. Currently, I still have a headache, like, sitting here right now, from that day. The headache has never left. And the doctor has explained that the pains are there. There's nothing they can do to make pain go – just disappear.

              The medication that I'm on helps out, you know, tremendously, but it still does not – the severity of my pains, it does not fix. And with that, like I said, I just – I've had so many – so many almost accidents, you know, driving and things just slip up on me, you know, due to my – you get – you get relaxed, you know, in the same – the same routine. And I was getting relaxed, that's where I find that more things slip up. You know I'm not paying close attention to things and –

ALJ:          Stop right there.

18

Plaintiff:      Yes, ma'am.

(ECF No. 9, at 84-85).

Plaintiff attributed the escalation of his pain to a "massive head injury" he suffered from walking into a wall at his home, where his "feet flew straight out from under me. And I laid on my back probably for 20 minutes." *Id.* at 74, 80-81. Plaintiff claimed to still have a headache from this event at the time of the hearing. *Id.* at 84. In one instance, Plaintiff testified that the incident with the wall happened in 2008 (after which Plaintiff worked until 2010). *Id.* at 73. Later, Plaintiff testified that the incident with the wall occurred in 2010, around the time he last worked as a fire watchman. *Id.* at 80. Plaintiff could not explain to the ALJ why no medical records documented such a significant injury. *Id.*[1]

The ALJ told Plaintiff that his activities of work and continued driving after the alleged date of disability were credibility factors. *Id.* at 95. The ability to work despite a pre-existing condition supports the ALJ's finding that Plaintiff was not disabled. *See Vaughan v. Shalala,* 58 F.3d 129, 131 (5th Cir. 1995); *Fraga v. Bowen,* 810 F.2d 1296, 1305 n.11 (5th Cir. 1987). The medical treatment records did not support limitations to the degree Plaintiff alleged, and Plaintiff's actual activities belied his testimony that he was completely unable to work. The ALJ's credibility determination is supported by substantial evidence and is conclusive. *Chambliss v.*

---

[1]Plaintiff did not stop working as a fire watchman due to impairment but because "the job was over with," "the person that hired me in that position no longer worked for the company," and Plaintiff was not called back. *Id.* at 68, 80.

*Massanari,* 269 F.3d 520, 522 (5th cir. 2001).

    5.   <u>Third-Party Statements</u>

The Appeals Council faulted the ALJ's initial decision for not "contain[ing] a consideration of the statements and opinions" of Plaintiff's wife and mother. (ECF No. 9, at 142). The Appeals Council ordered the ALJ to "[e]valuate the third party statements of the claimant's wife and mother, pursuant to Social Security Ruling 06-3p." *Id.* at 143.

Over half a page of the ALJ's opinion after remand is devoted to summarizing the third-party statements of Plaintiff's wife and mother. *Id.* at 33. Plaintiff contends nonetheless that the ALJ erred by not "indicat[ing] how the third party statements were weighed in assessing Plaintiff's mental impairments." (ECF No. 11, at 16). Plaintiff's wife and mother mostly discussed Plaintiff's vision and pain in their statements. The only portion of their statements concerning mental impairments follow:

> He has to sit in the back seat do [sic] to his anxiety. (Plaintiff's wife's statement, ECF No. 9, at 294).
>
> He also has a short attention span. He can't stay focused and I have to remind him to do simple things. Examples: take medicine and eat throughout the day. (Plaintiff's wife's statement, *Id.* at 311).
>
> He also has other medical issue [sic] with his back and his attention span. (Plaintiff's mother's statement, *Id.* at 313).

The ALJ's decision expressly references Plaintiff's wife's statement that Plaintiff "had a short attention span, and she had to remind him to do simple

things." (ECF No. 9, at 33). The ALJ stated that she "considered [the third-party statements], but the evidence (as discussed above) does not support limitation to the degree alleged . . . ." *Id..*

>   Information from third-party statements
>
>> cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-3p, 2006 WL 2329939, *2.

Ultimately, SSR 06-03p requires only that the ALJ "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6. Viewing the record as a whole, the ALJ's reasoning is evident. The medical treatment records did not support the level of impairment alleged by Plaintiff or assigned by Dr. Martin, and Plaintiff's actual activities belied a finding of disability.

## III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 15) is

**GRANTED** and the decision of the Commissioner **AFFIRMED**.

**SO ORDERED AND ADJUDGED**, this the 27th day of September, 2016.

/s/ *John C. Gargiulo*

JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE

22